[L. A. No. 23118. In Bank. Dec. 23, 1955.]

CHAPMAN COLLEGE (a Corporation), Appellant, v. RUSSELL H. WAGENER et al., Respondents.

798

Bromley, Ritter & Lindersmith and A. G. Ritter for Appellant.

R. D. Sweeney, J. E. Simpson and John R. Y. Lindley for Respondents.

GIBSON, C. J.—Plaintiff college brought this action for declaratory relief and for reformation of certain promissory notes and a deed of trust which it executed in connection with the purchase of a tract of land. The defendants, who include two of the sellers and the executor of the third, will for convenience be referred to as the sellers. By cross-complaint the sellers sought cancellation of all instruments relating to the sale upon the ground that there was no "meeting of the minds" of the parties. The trial court sitting without a jury declared the instruments to be void and, insofar as possible, endeavored to restore the parties to their positions before the sale.

The college has appealed, contending that the sole question in dispute was whether certain payments on the notes were to be credited solely on principal as claimed by the sellers, or whether they should be credited first on interest and the balance on principal as claimed by the college, and that the court should have resolved this question and declared the rights of the parties under a valid and subsisting agreement.

In June 1949 the parties executed a contract in which the college agreed to buy a large tract of land from the sellers at the price of $1,500,000. The sum of $150,000 was paid on account. A portion of the property was to be subdivided into lots and sold by the college and, as they were sold, the lots were to be released from the lien of a deed of trust which was to be given to secure the payment of the balance of the purchase price. With respect to the balance, the contract provided that the college should execute three notes totalling $1,350,000, bearing interest at the rate of two per cent payable annually, that the notes should provide that "all payments thereon shall first be credited on interest and the balance on principal," and that they should provide "for the payment of said sum of $1,350,000 . . . in the following manner." There followed detailed provisions in which the college agreed to pay to the sellers "on the 10th day of each month" a fixed per cent of the receipts from subdivision sales plus certain specified sums. These payments are referred to by the parties as "release price" payments or as the "sellers' share" of the proceeds of the sales made by the college.

The contract also provided that the college should create a subdivision trust to facilitate the sales of lots; that the trust should provide that all principal and interest due on the notes should be paid from the trust; and that, notwithstanding the provision in the notes that interest is to be paid annually, the trust should provide that whenever the trustee shall have available funds resulting from sales made by the college, the trustee shall pay interest on the trust deed notes on "the first day of each month, or as near to monthly as possible."

Before the property was conveyed to the college, it requested that the contract be modified and that those provisions which related to the creation of a subdivision trust be eliminated. The sellers consented to the modification upon certain conditions, which will be referred to later, and it was agreed that the release price payments would be made to the sellers from

each escrow as it was closed. The promissory notes, prepared by the attorneys for the parties acting together, contained provisions which were materially different from those specified in the contract. On or about October 12, 1949, the parties agreed in writing to eliminate the subdivision trust, the sellers executed deeds conveying the property to the college, and three notes and a trust deed were executed by the college.* The college began making sales of lots on or about October 26, 1949, and escrow instructions, which were prepared and executed by the college, were approved by the sellers. A dispute arose in March 1950 with respect to whether release price payments should be credited upon interest or principal, and in September 1951 the sellers threatened to cause a foreclosure sale under the deed of trust, but the sale of lots continued until shortly before the trial of the present action commenced in October 1952.

The notes recite that the college agrees to pay the principal sum with interest from date at the rate of two per cent per annum, payable annually on the anniversary date of the note; that the college agrees to pay the ''principal and interest'' in the following manner: (a) until the college has received $150,000 from sales it shall pay a fixed per cent of the gross sales price of each completed sale through escrow when closed; (b) thereafter it shall pay, each thirty days, a fixed sum from money received from sales completed in that period and in addition shall pay a fixed per cent of the gross sales price on each sale completed in each 30-day period; (c) the entire principal and interest shall be paid on or before 15 years; (d) specified sums were fixed as the ''minimum release'' prices per acre. It was also provided that, notwithstanding the provision that interest shall be paid annually, the college shall pay interest monthly as it accrues, or as near to monthly as possible, if funds resulting from sales are available therefor.

The notes departed from the language of the contract in several particulars. The provision that all payments should first be credited on interest was omitted. The provision of the contract that ''$1,350,000'' should be paid ''in the following manner'' was changed to provide that the ''principal and interest'' should be paid ''in the following manner.'' The manner of payment set forth in subdivisions a, b, c and d of

---

*R. H. Wagener was named as payee in a note for $900,000, one note for $225,000 was in favor of Louise Wessel, and the other note for $225,000 named Anna Armstrong as payee.

the notes substantially followed the provisions of the contract except that instead of requiring the release price payments to be made on the "10th of the month" it was provided they should be made "on each sale" and, after a certain amount had been paid, "in each period of thirty (30) days." The provision of the contract which directed the trustee of the subdivision trust to pay interest on "the first day of each month" from available funds was changed to provide that the college shall "pay interest monthly . . . if funds resulting from sales are available therefor."

The escrow instructions, which were prepared by the college, provided for the payment through escrow to the sellers of certain sums computed in accordance with the release price provisions of the notes, and further provided that there would be "no payment of interest or interest adjustment" on the principal through the escrow.

Although the notes clearly provide that principal and interest are to be paid from the proceeds of the sale of lots by the college, it is not clear whether the release price payments are to be applied solely on principal, and this is the crux of the dispute between the parties. There is nothing in the deed of trust or the escrow instructions which eliminates the uncertainty. Extrinsic evidence was therefore properly received to aid the court in interpreting the agreement between the parties as it existed after elimination of the subdivision trust and the execution of the notes.

The court found that the provision of the June 1949 contract that all payments should first be credited on interest was omitted from the notes by mutual agreement of the attorneys for the parties in order to make certain that the release price payments would be credited solely on principal and that the notes were approved by the college and its attorney before they were executed. The court also found that the sellers' consent to the elimination of the subdivision trust was conditioned upon the drawing of the notes and deed of trust so as to provide the sellers with substantially the same protection they would have received from a subdivision trust containing the usual and customary provisions, and that the standard provisions in such trusts specify that release price payments are to be credited solely on principal. It was further found that the sellers credited on their books as payments on principal all money received by them through escrow and that the college made similar entries in its books until some time after the controversy arose, when the college

made entries purporting to credit to interest and then to principal a portion of the payments theretofore made.

The foregoing findings, all of which are supported by the evidence, compel the conclusion that a valid agreement existed, after the modifications referred to above, under which all release price payments were to be applied solely on principal, and interest was to be separately payable from the college's share of the proceeds of the sales of lots.

This was not, however, the judgment of the court below. Instead, it concluded that the grant deed from the sellers conveying the property to the college, the three promissory notes, and the deed of trust were void and should be cancelled for lack of mutuality of consent of the parties. This conclusion was based upon a finding that the sellers understood that the release price payments were to be credited solely upon principal, that the chairman of the board of trustees of the college executed the notes in reliance upon the approval of their terms and provisions by the college's attorney, but that the chairman believed the notes provided that all payments made thereon should be first credited on interest and the balance on principal. This finding does not support the conclusion or the judgment, and it is contrary to other findings made by the court. The attorney for the college helped draft the notes, he had full knowledge of their provisions and, as we have seen, the court found that he agreed with the attorney for the sellers to omit from the notes the provisions specified in the contract that all payments be first credited on interest and the balance on principal in order to make certain that the release price payments would be credited solely on principal. The general rule of agency is that notice to or knowledge possessed by an agent is imputable to the principal. (Civ. Code, § 2332; see *Freeman* v. *Superior Court,* 44 Cal.2d 533, 537-538 [282 P.2d 857]; Rest., Agency, §§ 9, 272-282.) This rule ordinarily applies in the relation of attorney and client. (*Lazzarevich* v. *Lazzarevich,* 39 Cal.2d 48, 50 [244 P.2d 1]; see *Freeman* v. *Superior Court,* 44 Cal.2d 533, 537-538 [282 P.2d 857]; 4 A.L.R. 1592.)

Under the circumstances presented here, the actual belief of the college chairman is immaterial, and there is no basis for the finding and conclusion of the court that the promissory notes and other documents were void for lack of mutuality of consent.

Moreover, as disclosed by the findings and undisputed evidence, the conduct of the parties subsequent to the execu-

tion of the notes shows that they then contemplated that all release price payments were to be applied only to principal, and their conduct is wholly inconsistent with the conclusion of the court that the notes are void and with the declaration of the judgment that no agreement existed. As we have seen, the escrow instructions, prepared by the college and given in connection with the subdivision sales, provided that *no interest* would be paid through the escrows. Before the controversy arose both the college and the sellers credited all moneys received from the escrows upon the *principal* due on the notes. Even after the dispute arose, sales of the property were continued by agreement while settlement negotiations were taking place. The sellers, in asserting that the college was in default for failure to pay interest under the terms of the notes, made repeated statements that a specified contingent provision of the notes had come into effect and, upon one occasion in August, 1950, wrote to the college urging that certain sales of parcels "would be highly advantageous to the success of the entire project." It thus appears that the conduct of the parties is wholly inconsistent with the claim of the sellers, made for the first time in their cross-complaint, that no agreement existed.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied January 18, 1956. McComb, J., did not participate therein.