Filed 12/29/23; Modified and Certified for Partial Pub. 1/24/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

ALISHA KINNEY,

      Plaintiff and Respondent,

v.

CITY OF CORONA,

      Defendant and Appellant.

E079840

(Super.Ct.No. RIC2000404)

OPINION

APPEAL from the Superior Court of Riverside County. Harold W. Hopp, Judge. Reversed with directions.

Dean Derleth, City Attorney, John D. Higginbotham and Neil D. Okazaki, Deputy City Attorneys, for Defendant and Appellant.

Law Office of Brent J. Borchert and Brent J. Borchert, for Plaintiff and Respondent.

1

## I. INTRODUCTION

On December 23, 2019, plaintiff and respondent, Alisha Kinney, sent an e-mail request to defendant and appellant, City of Corona (City), asking City to make a public record available to Kinney: the name of the owner of a vehicle reported stolen in City on May 23, 2019, according to an online news article. (Gov. Code, former § 6254, subd. (f)(2)(A).) Kinney's request is governed by the California Public Records Act (the CRPA), codified at Government Code former section 6250 et. seq.[1]

On January 6, 2020, City denied Kinney's request on the ground the stolen vehicle owner's name was "confidential." (Gov. Code, former § 6259, subd. (a).) On January 28, Kinney petitioned the superior court for declaratory relief and a writ of mandate ordering City to disclose the name. On May 3, 2021, following a trial on the petition, the court ordered City to disclose the name to Kinney. (Gov. Code, former § 6254, subd. (f).) On July 1, 2021, this court denied City's petition to this court for an extraordinary writ directing the superior court to set aside the May 3, 2021 order. (Gov. Code, former § 6259, subd. (c).) Kinney later filed a motion for attorney fees, and, on August 2, 2022, the trial court entered judgment awarding Kinney $43,300 in attorney fees. (Gov. Code, former § 6259, subd. (d).)

---

[1] Through December 31, 2022, the CPRA was codified at Government Code former section 6250 et seq. (Stats 2021, ch. 614, ¶ 1.) Effective January 1, 2023, the CPRA was repealed and reenacted, without substantive changes, at section 7920.000 et seq. (Stats. 2021, ch. 614, §§ 1-2; *City of Gilroy v. Superior Court* (2023) 96 Cal.App.5th 818, 824, fn. 2.) Our analysis of City's claims in this appeal is based on the former CPRA provisions at Government Code former section 6250 et. seq.

City appeals from the judgment awarding Kinney $43,300 in attorney fees. City claims Kinney is not entitled to recover any of her attorney fees because she was not the prevailing party on her CPRA petition, given that her petition was not the "catalyst" that caused City to disclose the crime victim's name to a member of the public. (Gov. Code, former § 6259, subd. (d).) Rather, on February 20, 2020, before City disclosed the name to Kinney, City disclosed the name to Ronald Austin pursuant to Austin's CPRA request for the name. Austin was a client of attorney Brent Borchert, and, on May 20, 2020, Borchert became Kinney's attorney of record on Kinney's CPRA petition against City.

City claims Austin's knowledge of the name was imputed to Kinney through Borchert, as soon as Borchert became Kinney's attorney of record in this case. (Civ. Code, § 2332.) Thus, City argues Kinney's petition became moot following City's disclosure of the name to Austin, and Kinney, therefore, is not the prevailing party on her CPRA petition against City to disclose the name.

City also claims, and principally argues, that the trial court erroneously refused to enforce City's Code of Civil Procedure section 998[2] offer to Kinney, served on February 14, 2020, offering to disclose the vehicle owner's name and to pay Kinney $2,500 in costs and attorney fees. City claims the court erroneously concluded that the offer was invalid because it was ambiguous on the question of *to whom* City was offering to disclose the crime victim's name—to Kinney or a third party such as Austin. City claims the offer was unambiguous, and therefore valid, because no extrinsic evidence shows

---

[2] Unspecified statutory references are to the Code of Civil Procedure.

that, at the time the offer was made, Kinney had any reason to believe the offer was to disclose the name to a third party, such as Austin, rather than to Kinney.

We conclude substantial evidence supports the court's implied finding that Kinney was the prevailing party on her CPRA petition. (Gov. Code, former § 6259, subd. (d).) As the prevailing party, Kinney is entitled to recover her costs and reasonable attorney fees from City. (*Ibid.*) But City's February 14, 2020 section 998 offer to Kinney was unambiguous, valid and enforceable. No extrinsic shows that, when the offer was made, Kinney had any reason to believe the offer was to disclose the name to a third party, such as Austin, rather than to Kinney. Further, Kinney did not obtain a more favorable result on her CPRA petition. Thus, the offer cut off Kinney's right to recover her *postoffer* costs and attorney fees. (§ 998, subd. (c)(1).) In Kinney's motion for attorney fees, which resulted in the judgment awarding Kinney $43,300 in attorney fees, Kinney sought $2,475 in attorney fees through February 14, 2020, the date City made its section 998 offer. Thus, we reverse the judgment and remand the matter to the trial court with directions to enter a judgment awarding Kinney $2,475 in attorney fees.

## II.  ADDITIONAL BACKGROUND

A.  *Applicable CPRA Provisions*

The CPRA establishes a right of public access to government records. (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 492.) "Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the [CPRA] was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies." (*Los Angeles County Bd. of*

4

*Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 290.)  In enacting the CPRA in 1968, the Legislature declared this right of access to be "a fundamental and necessary right of every person in this state."  (Gov. Code, former § 6250 [now Gov. Code, § 7921.000]; *National Lawyers Guild*, at p. 492.)  In 2004, the voters ratified this declaration by amending the California Constitution to secure a "right of access to information concerning the conduct of the people's business."  (Cal. Const., art. I, § 3, added by Prop. 59, Gen. Elec. (Nov. 2, 2004); *National Lawyers Guild*, at p. 492.)

The CPRA requires the superior court to order the disclosure of public records, or show cause why the records should not be disclosed, if "it is made to appear" by a verified petition that the records "are being improperly withheld from a member of the public."  (Gov. Code, former §§ 6258, 6259, subd. (a).)  The court "shall order the public official to make the record public" if the court finds the official's refusal to disclose the record is not justified under Government Code former sections 6254 or 6255.  (Gov. Code, former § 6259, subd. (b).)  The petitioner may also seek declaratory relief under the CPRA.  (Gov. Code, former § 6258.)

If the petitioner prevails in litigation under the CPRA, the petitioner is entitled to recover its costs and reasonable attorney fees from the public agency.  (Gov. Code, former § 6259, subd. (d); *Motorola Communications & Electronics*, *Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1344 (*Motorola*).)  The petitioner prevails in litigation under the CPRA if the litigation motivated the defendant to release the requested documents or was the "catalyst" for the release.  (*Motorola*, at p. 1344; *Belth v. Garamendi* (1991) 232 Cal.App,3d 896, 901-902 (*Belth*).)

5

" 'The right of access to public records under the CPRA is not absolute.' " (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1320, 1322 (*County of Santa Clara*).) Government Code former section 6254 provided for " 'a diverse collection of exemptions from disclosure . . . .' " (*County of Santa Clara*, at p. 1320.) As relevant here, the statute required a public agency to disclose the name and age of a crime victim (subject to exceptions not applicable here), unless the disclosure would endanger the safety of an individual involved in the investigation. (See *Fredericks v. Superior Court* (2015) 233 Cal.app.4th 209, 226.)[3] Disclosure is strongly favored; thus, all exemptions are narrowly construed, and the agency opposing disclosure bears the burden of proving that an exemption applies. (*County of Santa Clara*, *supra*, 170 Cal.App.4th at p. 1321.) " '[U]nless exempted, all public records may be examined by any member of the public, . . . conceivably any person with no greater interest than idle curiosity.' " (*San Lorenzo Valley*, *supra*, 139 Cal.App.4th at p. 1408.)

The CPRA "does not allow limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure." (Gov. Code, former § 6257.5.) Thus, a public agency may not demand to know a requestor's purpose in requesting a public record; the requestor's purpose in seeking the record is irrelevant to whether the record is subject to disclosure. (See *Riskin*

---

[3] In addition, under the " ' catchall exception' of" Government Code former section 6255, a public agency could withhold records if it could show, on the facts of the particular case, that the public interest served by withholding the records clearly outweighed the public interest served by disclosure. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1408 (*San Lorenzo Valley*).)

*v. Hollywood Media Dist. Proper Owner Ass'n.* (Super. Ct. Los Angeles County, 2018, No. BS166075 ["[T]he requestor's purpose in seeking the records is irrelevant."].) Additionally, if a public record is exempt from disclosure, the agency waives the exemption if it voluntarily and knowingly discloses the record to one member of the public but not other members. (Gov. Code, former § 6254.5; *Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1189.) Disclosure to one member of the public waives the exemption, " 'requiring disclosure to any other person who requests a copy.' " (*County of Santa Clara*, *supra*, 170 Cal.App.4th at pp. 1321-1322.)

B. *Facts and Procedural Background*

    1. <u>Kinney's CPRA Request and Petition</u>

On December 23, 2019, Kinney e-mailed a public records request to City, asking City to disclose the name of a crime victim, specifically, the owner of a vehicle reported stolen on May 23. Kinney's request indicated that Kinney had read about the vehicle theft online, and included the name of the person who was arrested for the theft, along with the internet address of a news article reporting the arrest following a crash involving the vehicle. Kinney's petition sought a writ of mandate directing City to "comply with the CPRA by making all requested information [(the crime victim's name)] available to Petitioner . . . ."

On January 6, 2020, City sent an e-mail to Kinney, denying Kinney's request on the ground the crime victim's name was "confidential." On January 28, Kinney filed a petition in the superior court, alleging causes of action for declaratory relief and a writ of mandate, asking the court to (1) determine City had a duty to timely disclose the vehicle

owner's name to Kinney, and (2) order City to disclose the name to Kinney. On January 29, City became aware of Kinney's petition and discovered that Kinney and Kinney's attorney of record at the time, Bridgette Toraason, had filed "more than a dozen" CPRA petitions against public entities in California.

City's attorney, John Higginbotham, later claimed that Kinney and Toraason were engaged in a "shakedown scheme" to collect thousands of dollars in attorney fees from numerous California public agencies based on denied requests for public records. According to City, the alleged "scheme" worked like this: A petitioner like Kinney would find an internet news article reporting a crime; the petitioner would send an e-mail to the public agency referenced in the article, requesting the name of the crime victim; when the agency denied the CPRA request "on the grounds that the information is privileged, confidential, exempt, or otherwise non-disclosable," the petitioner would "immediately file" a "cookie-cutter" petition "accompanied by a request for a [filing] fee waiver" and asking the court to order the agency to pay the petitioner's attorney fees.

In a February 4, 2020 phone conversation, Higginbotham told Toraason he was "not impressed with" Kinney's petition and was "not inclined to pay the 'ransom.' "[4] On February 10, Higginbotham urged Toraason to dismiss the petition. Later on February

---

[4] It is not clear when Kinney first made a "ransom" or monetary demand of City, but the record includes a February 15, 2020 e-mail from Higginbotham to Toraason, referencing a "settlement demand" from Kinney for $6,500. In the e-mail, Higginbotham said it was "preposterous" that Toraason could have incurred $6,500 in attorney time on the case at that point.

10, City received an e-mail request from Ronald Austin "requesting the same crime victim's name" that Kinney requested on December 23, 2019.

2. City's Section 998 Offer to Kinney

On February 14, 2020, City served a section 998 offer proposing "to fully resolve" Kinney's petition by (1) having judgment entered in favor of Kinney and against City on Kinney's petition, (2) "ordering the City to disclose the information requested in Kinney's December 23, 2019 Public Records Act request," and (3) paying Kinney $2,500 for attorney fees and costs of suit. The offer stated it would be deemed withdrawn if it was not accepted before the earlier of trial or within 30 days after it was "made" (or served). (§ 998, subd. (b)(2).) Kinney did not accept the offer.

On February 20, 2020, City disclosed the crime victim's name to Austin, pursuant to Austin's CPRA request, which City received by e-mail on February 10. Higginbotham later averred he made the decision on behalf of City to disclose the name to Austin; but, at the time he made the decision, he was "unaware of any connection between Toraason and Austin." He was "suspicious," however, and he "raised the subject of Austin's request with attorney Toraason" in a February 14 phone conversation with Toraason. At that time, Toraason denied any knowledge of Austin or Austin's request. Toraason told Higginbotham, " 'I literally have no idea what you are talking about. I don't know a . . . Ron Austin.' "

3. Borchert's Substitution as Kinney's Attorney of Record

On May 20, 2020, Borchert sent an e-mail to Higginbotham, advising that, on May 20, Borchert was substituting into the case as Kinney's attorney of record in place of

9

Toraason. Before May 20, Higginbotham had never heard of Borchert and "had no knowledge" of Borchert's "involvement in the shakedown scheme, much less" that Borchert "now appear[ed] to be the architect" of the scheme. As of May 20, Higginbotham believed Toraason, Borchert, and Austin had been "working in concert since at least February of 2020." Higginbotham noted that, on April 8, Toraason served City with a request for admission, asking City to admit City "disclosed the requested information to another member of the public." This indicated to Higginbotham that Toraason knew, no later than April 8, about City's February 20 disclosure of the vehicle owner's name to Austin.

On May 20, 2020, Borchert served City with a more specific request for admission, asking City to admit that Higginbotham "personally provided the information sought by [Kinney] to another member of the public, Ronald Austin, on February 20, 2020." Soon after May 20, Higginbotham discovered that Borchert had filed "nearly 100" CPRA lawsuits during the previous year, mostly on behalf of Austin. At that point, Higginbotham believed Borchert, Toraason, Austin, and Kinney "were all complicit in a vast, statewide shakedown scheme, using the same cookie-cutter petition template, and substantially identical tactics."[5]

---

[5] City claimed it discovered "a new variant on the scheme by which Austin would e-mail" CPRA requests from an e-mail-address "plainly calculated to trigger spam blockers . . . and thereby deprive public agencies of the opportunity to respond to the [CPRA] request until after a lawsuit had been filed and the ransom demanded."

4. City's Summary Judgment Motion

On July 28, 2020, City moved for summary judgment on Kinney's petition, and the motion was denied. City claimed Kinney's petition was "moot" because City disclosed the crime victim's name to Austin and, because Borchert represented both Austin and Kinney in CPRA-related matters, Austin's knowledge of the name was "imputed" to Kinney through Borchert. City also argued that Kinney was not entitled to recover any attorney fees because Kinney's lawsuit was not the "catalyst" for Kinney's obtaining the crime victim's name; rather, Kinney obtained the name from Borchert through Austin. City stated that Kinney's "shakedown" lawsuit "motivated the City *not* to provide the name to Kinney" and that City would "*never* voluntarily provide the name to Kinney." In denying City's motion, the court ruled City did not meet its initial burden because (1) City cited no authority supporting its claim that its disclosure to Austin satisfied its duty (if any) to disclose the name to Kinney, and (2) City made no attempt to show the name was exempt from disclosure.

5. The May 3, 2021 Order to City to Disclose the Name to Kinney

On May 3, 2021, the court granted the writ portion of Kinney's CPRA petition, without ruling on Kinney's cause of action for declaratory relief, and ordered City to disclose the crime victim's name to Kinney. In a six-page ruling, the court reasoned that (1) the name was a public record, subject to disclosure (Gov. Code, former § 6254, subd. (f)(A)(2)); (2) City did not show that the "safety exemption" (*ibid.*) to disclosure applied; and (3), in any event, City's disclosure of the name to Austin waived City's claims that the safety exemption applied (Gov. Code, former § 6254.5).

11

The court also rejected City's claim that the name was exempt from disclosure based on Kinney's participation in the alleged " 'shakedown scheme.' " The court reasoned that a public record is exempt from disclosure under the catchall provision of Government Code former section 6255 if, " ' "[o]n the facts of a particular case, the public interest served by not making the record public *clearly outweighs* the public interest served by disclosure of the record." ' " (*New York Times Co. v Superior Court* (1990) 218 Cal.App.3d 1579, 1585.) The court ruled that "City's outrage" at Kinney's "perceived misuse of the CPRA does not establish facts" outweighing the public interest in the disclosure of the crime victim's name to Kinney.

Lastly, City claimed Kinney's CPRA petition was moot because City disclosed the crime victim's name to Austin, and Austin's knowledge of the name was imputed to Kinney through their common attorney, Borchert. The court ruled that the petition was not moot; City cited no authority to support its mootness theory; and "the gravamen" of Kinney's petition was City's refusal "to discharge its duty under the CPRA" to disclose the name to Kinney. Thus, the court ruled that, "even if" Kinney received the name "from another source, that would not render her petition for writ of mandate or request for declaratory relief moot" because "the law requires [City] to comply with [Kinney's] request, all presumptions weigh in favor of disclosure, and [City's] allegation[s] of a 'shakedown scheme' do not create an exemption."[6]

---

[6] Kinney has moved this court to take judicial notice of (1) City's May 18, 2021 amended petition to this court for an extraordinary writ of mandate setting aside the superior court's May 3, 2021 order granting Kinney's CPRA petition, in case

*[footnote continued on next page]*

### 6. Kinney's Operative Attorney Fee Motion

On February 22, 2022, Kinney filed her operative motion for attorney fees.[7]
Kinney claimed she was the prevailing party on the writ portion of her CPRA petition,
and her lawsuit was "a catalyst" in making the crime victim's name public. (Gov. Code,
former § 6259, subd. (d).) Kinney specifically claimed City's defense to her CPRA
request was "knowingly frivolous" because the defense was based on City's
"unsupported" claim that Kinney was part of a " 'shakedown scheme.' " Kinney argued
"much" of her fees were incurred due to City's continued refusal to disclose the name
directly to Kinney pursuant to Kinney's CPRA request. Kinney sought $71,955.50 in
costs and attorney fees.

---

No. E077081, and (2) this court's July 1, 2021 order denying City's extraordinary writ
petition. We grant the motion and take judicial notice of these court records. (Evid.
Code, §§ 452, subd. (d), 459.) On our own motion, we take judicial notice of Kinney's
June 3, 2021 opposition to City's extraordinary writ petition. These court records show
that the parties litigated City's mootness claim in connection with the trial on Kinney's
CPRA petition and in the subsequent writ proceeding in this court.

[7] Kinney filed an earlier motion for attorney fees on February 6, 2021, which was
denied without prejudice on the ground Kinney still had a pending cause of action for
declaratory relief. In denying Kinney's earlier fee motion, the court noted "the outcome
of the declaratory relief cause of action might affect whether petitioner achieved a more
favorable result at trial than she would have had if she had accepted" City's Code of Civil
Procedure section 998 offer. The court later granted City's motion for judgment on the
pleadings on Kinney's declaratory relief cause of action, reasoning that Kinney's petition
for a writ of mandate and complaint for declaratory relief concerned the same issue:
"whether City was required to disclose a particular record requested by a particular
person." And because the court had already granted Kinney's requested writ relief, there
was nothing left for the court to decide that had not been resolved by the court's May 3,
2021 order granting the writ portion of the petition. On February 1, 2022, the court
entered judgment in favor of City on the declaratory relief cause of action. On February
22, 2022, Kinney filed her second and operative motion for attorney fees.

City opposed the motion on several grounds. First, City argued Kinney was entitled to no more than $2,475 in attorney fees, the amount Kinney incurred *before* City made its February 14, 2020 section 998 offer to Kinney, according to Toraason's time records submitted in support of the fee motion. City argued Kinney did not obtain a more favorable result on her CPRA petition than City's section 998 offer proposed, namely, City's disclosure of the crime victim's name *to Kinney*.

Second, City argued Kinney was not entitled to *any* attorney fees because she was not the prevailing party on her CPRA petition, that is, the CPRA petition was not the "catalyst" of City's disclosure of the crime victim's name; rather, Austin's CPRA request was the catalyst, and Kinney obtained the name through Borchert and Austin. As support for this theory, City relied on Civil Code section 2332, which provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." City argued that this deemed notice rule "ordinarily applies" to attorney-client relationships, citing *Chapman College v. Wagener* (1955) 45 Cal.2d 796, 802. City argued Kinney had known the crime victim's name since City disclosed the name to Austin on February 20, 2020, and claimed Kinney had been "using" City's disclosure to Austin to her advantage by arguing City waived its claim that the name was exempt from disclosure based on City's disclosure to Austin. Thus, City argued Kinney's CPRA petition was not "the catalyst" for City's disclosure of the name to a member of the public; Austin's CPRA request was that catalyst; thus Kinney was not the

14

prevailing party on her CPRA petition, and as such Kinney was not entitled to recover any of her attorney fees.

Third, City argued Kinney's fee motion should be denied in the interests of justice because Kinney's CPRA request was not "legitimate," and the "true purpose" of Kinney's CPRA petition was to "perpetuate a vast shakedown scheme" to collect attorney fees from public agencies. City argued that courts should not allow the CPRA "to be misused or manipulated" in this way, and that Kinney pursued her CPRA petition with "unclean hands" after she obtained the crime victim's name through Borchert and Austin. Fourth, City argued Kinney's attorney fees were "unreasonably inflated."

In reply, Kinney argued City's section 998 offer was not "sufficiently specific" and therefore "ineffective because it was silent on to whom the [crime victim's name] would be disclose[d]." Kinney claimed the offer was " 'just vague enough' to deprive" Kinney of the opportunity to meaningfully evaluate the offer and make a reasoned decision whether to accept it. Kinney pointed out that City was still refusing to disclose the name "directly to" Kinney, even after the court rejected City's claim that City's disclosure of the name to Austin discharged City's duty to disclose the name to Kinney, and ordered City to disclose the name to Kinney, on May 3, 2021. Kinney argued that "City's continued obstinate refusal to disclose the [name] to Kinney in the face of a court order demonstrates that the 998 offer was *not* actually an offer to disclose the information to Kinney." Rather, City's claim that its disclosure of the name to Austin satisfied City's duty to disclose the name to Kinney showed City has "never intended to disclose to

15

Kinney," and City's "post-offer conduct" demonstrated "the significance of the offer's lack of specificity."

Kinney further argued that she obtained a more favorable result than City's section 998 offer. Specifically, she argued her costs and attorney fees exceeded $2,500 when the offer was made on February 14, 2020, but that Toraason had "discounted her final invoice." Third, Kinney argued her CPRA petition was indeed a catalyst for City's disclosure of the crime victim's name to Austin. Fourth, Kinney argued her requested attorney fees were reasonable.

The court issued a tentative ruling granting Kinney $43,300 in attorney fees, and the court later adopted its tentative ruling as its ruling on the fee motion. The tentative ruling stated: "City spends much of its opposition rearguing the merits of the case it lost a year ago. This is unpersuasive—and tends to support petitioner's argument that the City—or its attorney—intended to force petitioner to incur unnecessary attorney fees. Nor is the City's argument based on its section 998 offer persuasive—it could have, as eventually ordered by this Court—simply turned over the information requested by petitioner and left the amount of attorney's fees to be determined by a motion. Those fees would have been far less than those incurred by petitioner as set forth in the moving papers. As argued by petitioner in her reply, the section 998 offer is ambiguous about to whom disclosure of the requested information would be made—had the offer been accepted, the City might have made the argument that the Court found unpersuasive a year ago (and which it repeats in its opposition papers) that it had complied with its CPRA obligations by disclosing the requested information not to petitioner but to

16

someone else. Accordingly, the Court is not persuaded that petitioner failed to obtain a more favorable judgment than what the City offered in its section 998 offer."

In a supplemental opposition, City argued its section 998 offer was *unambiguous*; the offer was to disclose the crime victim's name *to Kinney*, not to someone else; the enforceability of the offer had to be determined based on the circumstances existing at the time the offer was served on February 14, 2020, not subsequent events; City did not disclose the name to Austin until February 20; and Kinney presented no evidence that Kinney rejected the offer because the offer was ambiguous. City also claimed it never argued that it discharged its CPRA duties to Kinney by disclosing the name to Austin; instead it argued Kinney's CPRA petition was moot because Austin's knowledge of the name was imputed to Kinney through Borchert simply because Borchert represented Kinney and Austin in separate CPRA-related matters against public agencies.

City also pointed out that it disclosed the name "directly to" Kinney "five times" during the litigation, the first when City filed City's motion for summary judgment on July 28, 2022, which included a copy of City's e-mail disclosure of the name to Austin. City claimed it disclosed the name to Kinney four more times: in City's March 1, 2021 trial briefing on Kinney's CPRA petition; in City's May 18, 2021 writ petition to this court; City's August 31, 2021 opposition to Kinney's earlier and withdrawn fee motion; and in City's April 7, 2022 opposition to Kinney's second and operative fee motion.

Thus, City argued that, when the court ordered City to disclose the name to Kinney on May 3, 2021, the court was ordering City "not only to give [Kinney] information she indisputably already had, but also to do something that the City

17

indisputably *had already done*." This, City argued, "was objectively *not* a more favorable result than the City proposed" in City's section 998 offer, given that Kinney did not have the requested information (the crime victim's name) when the section 998 offer was served on February 14, 2020. City also argued that the CPRA did not require public records to be made available to a requestor "in any particular way" and did not specify to whom the agency must "make the information available."

On May 4, 2022, the court adopted the court's tentative ruling as the court's final ruling. Neither party requested oral argument. In its ruling, the court found that the hourly rates for Kinney's attorneys were unreasonably high but that the number of hours requested was reasonable, "particularly given the intransigence of the City's attorney." The court reduced Borchert's and Toraason's requested hourly rates of $550 and $495, respectively, to $400 and $300, and awarded Kinney a total of $43,300 in attorney fees. The court granted City's motion to tax Kinney's only requested cost item, an $85 courier fee that the court found was unnecessary and merely convenient to Kinney.

For Toraason, Kinney requested total attorney fees of $6,187.50, for 12.5 hours at $495 per hour, for work performed between January 25 and May 19, 2020. Toraason's time records show Torasson incurred $2,475 in attorney fees through February 13, 2020 at her requested and unreduced hourly rate of $495. Toraason's next time entry is dated February 15, 2020, the day after City's section 998 offer was served. Borchert's first time entry is dated May 28, 2020, and is for preparing and filing the substitution of attorney.

18

7. The Attorney Fee Award and Judgment

On May 27, 2022, the court issued a written order awarding Kinney $43,300 in attorney fees. On August 4, 2020, the court entered judgment in favor of Kinney on the fee award. City filed a timely appeal from the judgment.[8]

III. DISCUSSION

A. *Kinney Prevailed On Her CPRA Petition*

We first address City's claim that Kinney is not entitled to recover any of her attorney fees from City (including her pre-section 998 offer fees) because Kinney was not the prevailing party on her CPRA petition. (Gov. Code, former § 6259, subd. (d).) More specifically, City argues Kinney was not the prevailing party because her CPRA petition was not the "catalyst" for City's public disclosure of the information Kinney sought in her CPRA request—the crime victim's name. We conclude substantial evidence supports the court's implied finding that Kinney was the prevailing party on her CPRA petition.

1. Legal Principles

Government Code former section 6259, subdivision (d), mandated an award of reasonable attorney fees and costs to a requestor who prevails in litigation filed pursuant to the CPRA. (*Belth*, *supra*, 232 Cal.App.3d at pp. 898-900.) A plaintiff prevails within

---

[8] We observe that our review is limited to the August 4, 2022 judgment awarding Kinney $43,300 in attorney fees. The May 3, 2021 order directing City to disclose the crime victim's name directly to Kinney is not reviewable in this appeal; that order was only reviewable by extraordinary writ petition, which the City filed on May 18, 2021 and this court summarily denied on July 1, 2021. (Gov. Code, former § 6259, subd. (c); *Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1378 (*Crews*).) An order granting attorney fees under the CPRA is reviewable on appeal from a final judgment in the CPRA proceeding. (*Crews*, at pp. 1378-1379.)

19

the meaning of the statute if the plaintiff " ' "files an action which results in defendant releasing a copy of a previously withheld document" ' "—that is, if the action " ' "motivated" ' " the defendant to produce the document.  (*Riskin v. Downtown Los Angeles Property Owners Assn.* (2022) 76 Cal.App.5th 438, 445 (*Riskin*); *L.A. Times v. Alameda Corridor Transp. Auth.* (2001) 88 Cal.App.4th 1381, 1391.)  "The key is whether there is a substantial causal relationship between the lawsuit and the delivery of the information."  (*Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451, 464 (*Sukumar*).  This is sometimes referred to as the "catalyst theory."  (*Riskin*, at p. 445.)

The catalyst theory was explained in *Belth* and *Sukumar*:  " ' " Case law takes a pragmatic approach in defining [a prevailing party]."  [Citation.]  "In order to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained."  [Citation.]  "However, a plaintiff need not achieve a favorable final judgment in order to be a successful party.  A defendant's voluntary action induced by plaintiff's lawsuit will still support an attorneys' fee award on the rationale that *the lawsuit* spurred defendant to act or *was a catalyst* speeding defendant's response."  [Citation.]  . . .  "If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved, then plaintiff has shown the necessary causal connection."  [Citation.]  A plaintiff is considered the prevailing party if his lawsuit motivated defendants to provide the primary relief sought or activated them to modify their behavior [citation], or if the litigation substantially contributed to or was demonstrably influential in setting in motion the process which eventually achieved the desired result.' "  (*Sukumar*, *supra*, 14 Cal.App.5th at p. 463, italics added, quoting *Belth*,

20

*supra*, 232 Cal.App.3d at pp. 901-902.)  "The catalyst theory applies, and a plaintiff may prevail even where a court did not enter judgment in its favor, so long as the litigation caused the disclosure."  (*Riskin*, *supra*, 76 Cal.App.5th at p. 445.)

    2.  Analysis

City argues the court's attorney fee order "conspicuously fails to include a finding that Kinney was the prevailing party or, more specifically, that Kinney's lawsuit was the 'catalyst' for her obtaining the requested information [(the crime victim's name)]."  The court implicitly found, however, that Kinney was the prevailing party, and that Kinney's lawsuit was the catalyst for City's disclosure of the crime victim's name, when the court issued its order awarding Kinney $43,300 in attorney fees.

We review a court's determination of whether a litigant is the prevailing party under the CPRA for abuse of discretion.  (*Sukumar*, *supra*, 14 Cal.App.5th at p. 464.)  Here, the court did not abuse its discretion in implicitly concluding Kinney prevailed on her CPRA petition.  The record shows that Kinney's lawsuit was the catalyst—the motivating factor—for City's disclosure of the crime victim's name *to Kinney*—the relief Kinney sought in her CPRA petition.  Throughout the litigation, City consistently refused to disclose the crime victim's name *directly* to Kinney.  City insisted, not that City had no obligation to disclose the name to Kinney, but that Kinney's CPRA petition was moot after Kinney obtained the crime victim's name through Austin and Borchert.

But as the court found in ordering City to disclose the name *directly to* Kinney on May, 3, 2021, the "gravamen" of Kinney's CPRA petition was City's refusal to discharge City's duty under the CPRA to disclose the name to Kinney.  In awarding Kinney

21

attorney fees, the court could have reasonably concluded—because the entire record showed—that City would never have disclosed the name directly to Kinney had Kinney not filed her CPRA petition seeking writ and declaratory relief on City's obligation to disclose the name *to Kinney*. Throughout the litigation, City's attorney, Higginbotham, consistently declared that City would not disclose the name to Kinney. Thus, Kinney's CPRA petition " 'substantially contributed to or was demonstrably influential in setting in motion the process which eventually achieved the desired result' "—disclosure of the name to Kinney. (*Sukumar*, *supra*, 14 Cal.App.5th at p. 463.)

City claims Kinney's CPRA request was not the catalyst for City's disclosure of the crime victim's name because Kinney "undisputedly obtained the [name] through another avenue [(Austin and Borchert)] entirely unrelated to her lawsuit several months *before again* obtaining [the name] through this lawsuit." City argues these two factors preclude an attorney fee award. City's first point echoes City's earlier mootness claim. City argues that its February 20, 2020 disclosure of the crime victim's name to Austin *was imputed* to Kinney through Borchert no later than May 20, 2020, when Borchert became Kinney's attorney of record in her CPRA petition against City. Thus, City argues that City's disclosure to Austin, not Kinney's unrelated lawsuit, was the catalyst for City's *effective* disclosure of the name to Kinney.

Again, City relies on Civil Code section 2332, which provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Although this imputed notice rule generally applies between

22

an attorney and client (*Chapman College v. Wagener*, *supra*, 45 Cal.2d at p. 802), City cites no authority for extending the rule to *different clients* of the same attorney, particularly when there is no evidence the clients have a principal-agency relationship involving their common attorney.

City's imputed notice argument is based on the unsupported assumption that Borchert had a duty to disclose the crime victim's name to Kinney, after City disclosed the name to Austin, simply because Borchert was acting as attorney of record for Kinney and Austin in separate CPRA-related matters on and after May 20, 2020. But City adduced no evidence that Austin and Kinney had a principal-agency relationship involving Borchert, such that notice of City's disclosure of the name to Austin "ought" to have been imputed to Kinney through Borchert at any time. (Civ. Code, § 2332.)

We also disagree that City's indirect disclosure of the name to Kinney through City's motions and other pleadings in this lawsuit, beginning with City's July 28, 2020 summary judgment motion, satisfied City's obligation to disclose the name to Kinney. Kinney's CPRA petition sought an order directing City to comply with its obligation under the CPRA to disclose the name *to Kinney*. The entire record shows City never would have disclosed the name to Kinney had Kinney not filed her CPRA petition.

Additionally, if a plaintiff obtains only partial relief, the plaintiff is entitled to attorney fees unless the plaintiff obtains results " 'that are so minimal or insignificant as to justify a finding that the plaintiff did not [in fact] prevail.' " (*Sukumar*, *supra*, 14 Cal.App.5th at p. 464.) The results Kinney obtained—the May 3, 2021 order directing City to disclose the name to Kinney—was not minimal or insignificant. The order

23

vindicated Kinney's right to the disclosure of the information sought in Kinney's CPRA request. Thus, it is insignificant that Kinney's declaratory relief claim was ruled moot, and judgment on that claim was entered in favor of City, after the court granted the writ portion of Kinney's CPRA petition. Kinney's declaratory relief claim was moot only because the May 3, 2021 order directing City to disclose the name to Kinney left nothing further for the court to declare or determine regarding City's duty, under the CPRA, to disclose the name to Kinney.

B. *City's Section 998 Offer Was Unambiguous and Therefore Enforceable*

City principally claims the trial court erroneously concluded that City's February 14, 2020 section 998 offer was invalid and unenforceable because it was ambiguous, or insufficiently specific, as to *whom* City was proposing to disclose the crime victim's name—Kinney or a third party, such as Austin. Thus, City claims the court erroneously awarded Kinney any *postoffer* attorney fees (§ 998, subd. (c)(1)), or fees incurred after the offer was made on February 14, 2020. City claims Kinney's fees must be limited to $2,475, the amount Kinney incurred with Toraason, at Torasson's requested and unreduced hourly rate of $495, through February 14, 2020. We agree.

1. Section 998

As a general rule, a prevailing party in civil litigation is entitled to recover the party's "costs" in the litigation. (§ 1032.) Recoverable costs include attorney fees when authorized by statute. (§ 1033.5, subd. (a)(10)(B).) Section 998 " 'establishes a procedure to shift costs if a party fails to accept a reasonable settlement offer before trial.' " (*Oakes v. Progressive Transp. Servs., Inc.* (2021) 71 Cal.App.5th 486, 497.) The

24

statute provides: "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs . . . ." (§ 998, subd. (c)(1).) A section 998 offer must be in writing, must be served on the offeree, and must allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated in the offer. (§ 998, subd. (b).)

A section 998 offer must also "be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer. [Citation.] Any nonmonetary terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer." (*Fassberg Construction Co.*, *v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 (*Fassberg*); *Glassman v. Safeco Inc. Co. of America* (2023) 90 Cal.App.5th 1281, 1313.) Although " [no] 'particular language' is required for a section 998 offer" (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 896), "[t]he party extending the statutory offer of compromise bears the burden of assuring the offer is drafted with sufficient precision to satisfy the requirements of section 998. [Citation.] To that end, a section 998 offer is construed strictly in favor of the party sought to be subjected to its operation." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727, superseded by statute as stated in *Finlan v. Chase* (2021) 68 Cal.App.5th 934, 942, fn. 7; *Ignacio v. Caracciola* (2016) 2 Cal.App.5th 81, 86 ["The offer must be strictly construed in favor of the party sought to be bound by it."]; accord, *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 832.) Any ambiguity in a

section 998 offer is also strictly construed against the proponent. (*Prince v. Invensure Ins. Brokers*, *Inc.* (2018) 23 Cal.App.5th 614. 622.)

Section 998 is intended to encourage pretrial settlements. (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270.) To further this purpose, courts must consider the validity of a section 998 offer as of the date the offer is served, without the benefit of hindsight or in light of subsequent events. (*Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 295 (*Khosravan*); see *Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1485 ["The reasonableness of a defendant's section 998 settlement offer is evaluated in light of 'what the offeree knows or does not know at the time the offer is made,' along with what the offeror knew or should have known about facts bearing on the offer's reasonableness."].)

2. City's Section 998 Offer Was Sufficiently Specific and Unambiguous

The issue of whether City's section 998 offer was sufficiently specific, definite, and unambiguous *in identifying the person to whom City was proposing to disclose the crime victim's name* is a question of law subject to de novo review. "Ascertaining the terms of an offer, including the determination whether the offer is sufficiently specific and certain for purposes of section 998, is a question involving the interpretation of a writing. We independently interpret a writing if the interpretation does not turn on the credibility of extrinsic evidence." (*Fassberg*, *supra*, 152 Cal.App.4th at p. 765.)[9]

---

[9] Kinney argues that we review the trial court's ambiguity determination for an abuse of discretion because it "amounts to a finding" that City's CCP section 998 offer was unreasonable and made in bad faith. We disagree. No issue was raised below or is

*[footnote continued on next page]*

Critically here, the interpretation of City's section 998 offer does not turn on the credibility of any proffered extrinsic evidence. "The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.' " (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) " ' [W]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement . . . .' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.)

As *Winet* explained, "[t]he decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.] [¶] Different standards of appellate review may be applicable to each of these two steps, depending upon the context in which an issue arises. The trial court's ruling on the threshold determination

raised in this appeal concerning whether City's section 998 offer was unreasonable or was not made in good faith. (*Barella v. Exch. Bank* (2000) 84 Cal.App.4th 793, 797.) Thus, Kinney mistakenly relies on cases holding that the abuse of discretion standard applies to a trial court's determination of whether a section 998 offer was unreasonable or not made in good faith. (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112-1113 [A section 998 offer is in good faith if it is realistically reasonable under the circumstances of the case and carries " ' "some reasonable prospect of acceptance." ' "].) These authorities are not germane to whether the section 998 offer was ambiguous.

of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus the threshold determination of ambiguity is subject to independent review. [Citation.] [¶] The second step—the ultimate construction placed upon the ambiguous language—may call for differing standards of review, depending upon the parol evidence used to construe the contract. When the competent parol evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld as long as it is supported by substantial evidence. [Citation.] However, when no parol evidence is introduced (requiring construction of the instrument solely based on its own language) or when the competent parol evidence is not conflicting, construction of the instrument is a question of law, and the appellate court will independently construe the writing." (*Winet*, *supra*, 4 Cal.App.4th at pp. 1165-1166.)

Here, no parol or extrinsic evidence indicates that City's section 998 offer was reasonably susceptible to the construction Kinney later advanced in her reply to City's opposition to her fee motion: that the offer was ambiguous as *to whom* City was proposing to disclose the crime victim's name at the time the offer was made. To be sure, when the offer was made on February 14, 2020, City had received Austin's February 10 e-mail, asking City to disclose the same crime victim's name to Austin. On February 14, City's attorney, Higginbotham, spoke with Toraason about Austin's CPRA request. But Toraason denied knowing about Austin's request and said she had never heard of Austin. On February 20, City disclosed the name to Austin. Although City's section 998 offer stated it would pay Kinney $2,500 in attorney fees and costs, the offer

28

did not specify the person to whom City would disclose the crime victim's name, in "full settlement" of Kinney's CPRA petition. But there is no evidence that Higginbotham, or anyone acting on City's behalf, in any way indicated to Toraason (or Kinney), that city's section 998 offer was contingent on Kinney accepting City's disclosure of the crime victim's name to a third party, such as Austin, or to anyone other than Kinney. Most critically, there is no evidence that Toraason (or Kinney) actually believed or had any reason to believe that City's section 998 offer was subject to this contingency, at any time before the offer expired on March 16 (30 days after it was made on February 14).

To the contrary, City adduced uncontroverted evidence that Higginbotham, who handled City's defense of Kinney's CPRA petition, did not know of the "connection" between Austin and Kinney until after Borchert became Kinney's attorney of record in this case on May 20, 2020. The legal ramifications or import of City's February 20 disclosure of the crime victim's name to Austin became a point of contention in the case *only after* Borchert became Kinney's attorney of record on May 20.

After May 20, City claimed City's February 20 disclosure of the crime victim's name to Austin mooted Kinney's CPRA petition for an order directing City to make the name "available" to Kinney. Kinney, for her part, claimed that City's disclosure of the name to Austin waived any claim that the name was exempt from disclosure. (Gov. Code, former § 6254.5.) But, based on the facts the record shows were known or reasonably should have been known to Toraason (and, through Toraason, to Kinney) at the time the offer was made, "[t]he offer left no room for ambiguity." (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 630.) Indeed, Kinney proffered no

29

evidence that she or Toraason actually believed or had reason to believe that City's section 998 offer was "not actually an offer to disclose the name to Kinney" at the time the offer was made on February 14, 2020. City's continuing failure to disclose the crime victim's name directly to Kinney, *after* Kinney declined to accept the offer *and* the offer expired on May 16 (§ 998, subd. (b)), in no way indicated that the offer was ambiguous at the time the offer was made on February 14.

As City points out, the trial court's conclusion that City's section 998 offer was ambiguous appears to have been based on the arguments City made *after* City's section 998 offer was made. The court reasoned: "As argued by [Kinney] in her reply, the section 998 offer is ambiguous about to whom disclosure of the requested information would be made—*had the offer been accepted, the City might have made the argument that the Court found unpersuasive a year ago* (*and which* [*City*] *repeats in its opposition papers*) *that it had complied with its CPRA obligations* [*to Kinney*] *by disclosing the requested information not to* [*Kinney*] *but to someone else.* Accordingly, the Court is not persuaded that [Kinney] failed to obtain a more favorable judgment than what the City offered in its section 998 offer." (Italics added.)

In her reply to City's opposition to her attorney fee motion, Kinney argued for the first time that City's offer was ambiguous because the offer did not specify to whom City would disclose the crime victim's name. Kinney argued: "City's continued obstinate refusal to disclose the [name] to Kinney in the face of a court order demonstrates that the 998 offer was *not* actually an offer to disclose the [name] to Kinney." But Kinney's

argument was based on arguments City made in the litigation several months *after* City's section 998 offer expired on March 16, 2020.

In sum, the entire record shows that City's section 998 offer was not ambiguous at the time it was made on February 14, 2020 or before it expired on March 16. In fact, at the time City made its section 998 offer, City had not provided the requested information to anyone else. Nor was City aware of any other person or entity to whom disclosure might be made other than Kinney. The offer was sufficiently specific and unambiguous on the question of *to whom* City would disclose the crime victim's name if the offer was accepted: City would disclose the name to Kinney. There was no reason to believe the disclosure would be made to anyone but Kinney. Thus, the offer was valid and enforceable. Kinney also failed to obtain a more favorable result on her CPRA petition than City proposed in its section 998 offer: disclosure of the crime victim's name to Kinney. Thus, as the prevailing party on her CPRA petition, Kinney may only recover Kinney's *preoffer* costs and attorney fees. (§ 998, subd. (c)(1).) As noted, Toraason's time records show that Kinney incurred $2,475 in attorney fees with Toraason through February 13, calculated at Toraason's unreduced hourly rate of $495. There are no time entries on February 14. Thus, Kinney's attorney fee award against City must be limited to $2,475.

## IV. DISPOSITION

The August 4, 2022 judgment awarding Kinney $43,300 in attorney fees against City is reversed. The matter is remanded with directions to the trial court to enter a new

judgment awarding Kinney $2,475 in attorney fees against City.  The parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278.)

FIELDS\
Acting P. J.

We concur:

RAPHAEL\
J.

MENETREZ\
J.

Filed 1/24/24

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ALISHA KINNEY, | E079840 |
| Plaintiff and Respondent, | |
| v. | (Super.Ct.No. RIC2000404) |
| CITY OF CORONA, | ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on December 29, 2023, is modified as follows:

On page 2, in the last sentence of the first paragraph, change the parenthetical from "(the CRPA)" to "(the CPRA)."

On page 7, remove the following sentence in its entirety:

Kinney's petition sought a writ of mandate directing City to "comply with the CPRA by making all requested information [(the crime victim's name)] available to Petitioner . . . ."

1

On page 8, following the first sentence at the top of the page, which ends, "(2) order City to disclose the name to Kinney," and before the second sentence, which begins, "On January 29, City became aware of Kinney's petition . . . ," insert the following sentence:

The petition asked the court to order City to "comply with the CPRA by making all requested information available to Petitioner . . . ."

On page 14, in the second paragraph, which begins, "Second, City argued Kinney was not entitled to *any* attorney fees . . . ," remove the last sentence of the paragraph in its entirety, which begins, "Thus, City argued Kinney's CPRA petition was not 'the catalyst' for City's disclosure of the name to a member of the public . . . ."

On page 15,  remove the last sentence on the bottom of the page, which begins, "Rather, City's claim that its disclosure of the name to Austin satisfied City's duty to disclose . . . ," and replace it with the following:

Rather, City's claim that its disclosure of the name to Austin satisfied City's duty to disclose the name to Kinney showed City "never intended to disclose [the name] to Kinney," and City's "post-offer conduct" demonstrated "the significance of the offer's lack of specificity."  Kinney also claimed she obtained a more favorable result than City's section 998 offer because her costs and attorney fees exceeded $2,500 when the offer was made on February 14, 2020, but Toraason had "discounted her final invoice." Lastly, Kinney argued her CPRA petition was a catalyst for City's disclosure of the crime victim's name to Austin, and her requested attorney fees were reasonable.

On page 16, remove the first full paragraph in its entirety, which begins, "Kinney further argued that she obtained a more favorable result than City's section 998 offer. Specifically, she argued her costs and attorney fees . . . ."

On page 16, in the paragraph that begins, "The court issued a tentative ruling granting Kinney $43,300 in attorney fees," insert the word "final" before the word "ruling." The sentence should read:

The court issued a tentative ruling granting Kinney $43,300 in attorney fees, and the court later adopted its tentative ruling as its final ruling on the fee motion.

On page 17, in the paragraph that begins, "City also pointed out that it disclosed the name 'directly to' Kinney 'five times' during the litigation," add the word "in" following the semicolon and before the words "City's August 31, 2021 opposition."

On page 18, remove the paragraph that begins, "On May 4, 2022, the court adopted the court's tentative ruling as the court's final ruling. Neither party requested oral argument. In its ruling, the court found . . . ," and replace it with the following paragraph:

Neither party requested oral argument. In its final ruling on the motion, the court found that the hourly rates for Kinney's attorneys were unreasonably high but that the number of hours requested was reasonable, "particularly given the intransigence of the City's attorney." The court reduced Borchert's and Toraason's requested hourly rates of $550 and $495, respectively, to $400 and $300, and awarded Kinney $43,300 in attorney fees. The court granted City's motion to tax Kinney's only requested cost item, an $85 courier fee that the court found was unnecessary and merely convenient to Kinney.

3

On page 19, in the sentence preceding section III, add the words "notice of" before the words "appeal from judgment." The sentence should read:

City filed a timely notice of appeal from the judgment.

On page 26, in the sentence that begins, "To further this purpose, courts must consider the validity . . . ," change the word "served" to the word "made." The sentence should read:

To further this purpose, courts must consider the validity of a section 998 offer as of the date the offer is made, without the benefit of hindsight or in light of subsequent events.

On page 29, in the third line from the top of the page, capitalize the "c" in "city's section 998 offer."

On page 30, in the fifth line from the top of the page, change "May 16" to "March 16."

On page 31, in the first full paragraph that begins, "In sum, the entire record shows . . . ," and in the second sentence of that paragraph, which begins, "In fact, at the time City made its section 999 offer," change the word "its" to "the" and add "[the crime victim's name]" before the words "to anyone else." The sentence should read:

In fact, at the time City made the section 998 offer, City had not provided the requested information [the crime victim's name] to anyone else.

These modifications do not change the judgment.

4

The requests for publication of the nonpublished opinion filed in the above matter on January 17, 2024, are GRANTED.  The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2).

IT IS SO ORDERED that said opinion, filed December 29, 2023, be certified for publication, with the exception of part IIIA.

CERTIFIED FOR PARTIAL PUBLICATION

FIELDS
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

5